IAeeman, J.,
delivered the opinion of the Court.
This is a petition for mandamus to compel defendant Aydelette, entry taker of Hickman county, to receive certain entries, and record them on his books, tendered by complainant, W. S. Eainey. These entries were thirteen in number, marked as exhibits A to M, inclusive.
The entry taker refused to spread these entries on his books, on the ground that the same land was covered by older^ entries, as appears by his endorsement on them, October 9, ,1857.
*124 It appears from the record, that L. 0. Perry was entry taker from about the year 1836, to May, 1851; that George Perry succeeded him in May, 1851, aud ■ continued in office till 1855 or 1856. That George Perry was surveyor from 1835 or 1836, to May, 1851. Aydelette had been surveyor of Hickman county from 1851, up to the time of filing his answer in this case.
The lands sought to be entered by Bainey, it appears, had been previously entered by the following parties, to-wit: The entries referred to in record as exhibits B, D, E, P, G and H, were made by George Perry, while he was entry taker, and the mandamus was granted as to them' by the Circuit Judge.
Entry, exhibit A, for three thousand eight hundred acres, was made by George Perry and D. B. Warren, July 3d, 1846, and as to it the mandamus was disallowed. Eive other entries seem to have been made by D. B. Warren, from 1844 to 1847— the mandamus was disallowed as to all these entries. Both parties appealed from the judgment of the Circuit Court, so that the entire action of that Court is before us for revision. In the brief of counsel for complainant, it is admitted, however, that there is no proof that Warren was a deputy entry taker or surveyor, and the case is abandoned, as we understand it, as to the entries made by him.
The answer admits that D. C. Perry was entry -taker from 1836 to 1851, and George Perry from that time to 1855.
*125 The first question presented for our decision is, •whether a mandamus is the proper remedy in this case. . There can he no question that if the lands sought to be entered in this case by Rainey, are subject to entry, then it was the duty of" the entry taker to receive the entries tendered, and that on failure or refusal to perform this duty, that officer can be compelled to perform it' by this proceeding. The office of a mandamus is to compel the performance of an official duty: Gillespie v. Wood, 4 Hum., 437; 6 Hum., 493.
A mandamus, however, would not lie to compel the entry taker to receive ' an entry, where it is doubtful whether a previous entry is void or not: 2 Hum., 330. Yet if the entry was void — an absolute nullity — or made in violation of law, and declared void by statute, then such entry interposes no obstacle to a subsequent ^enterer, and the entry taker may be compelled .to receive an entry tendered in accordance with the law, as in the case of Graham v. Smith, 1 Hum., 547, where a party sought to make two entries’ by virtue of the same warrant — the last entry was held void in a proceeding by mandamus, and the entry taker compelled to receive an entry for the land covered by it. The Act of 1821, c. 31, which forbid the second entry, by virtue of the same warrant, provided, “That any entry hereafter made contrary to. the true intent and meaning of this act, shall bo void to all intents and purposes.” The Court in the above case held, that the land attempted to be *126 appropriated by tbe second entry, was vacant, subject to entry, interposed no obstacle to a subsequent enterer, and ordered an entry to. be received by tbe entry taker on mandamus. See also Johnson et als. v. Lucas and Gaither, 11 Hum., 307; 5 Hum., 327, 328.
Tbe first question tben, in tbis case is, were tbe entries made by tbe entry taker in bis own office void, or did tbey interpose any obstacle to a subsequent enterer, wbo might desire to obtain tlie land from tbe State, by paying tbe fees, as provided by law, and receiving a grant for tbe same; or could tbe entries be declared void alone at tbe suit of the State.
Tbe Act of 1777, c. 1, entitled “An Act for establishing offices for receiving entries of claims for lands in tbe several counties within tbis State, for tbe method of obtaining title to the same, and for other purposes therein mentioned,” provides in s. 1, for tbe election by tbe Justices of each county, of an entry taker, “ to receive entries of claims for lands within said counties, and also one surveyor for each county.
Section 5 provides for tbe mode of making entries in tbe office of the entry taker thus elected in substance as follows: “ That the claimant of any land shall produce to tbe entry taker, a writing setting forth tbe name of tbe county in which tbe land lies, with such description as therein provided for, and that, “every-such writing shall be endorsed by tbe entry taker, with the name of tbe claimant, *127 number of acres claimed,. and a copy thereof shall be entered in a well bound book, etc., and every entry shall be made in the order of time in which it shall be received, and numbered in the margin,” etc.
By sect. 18 of this act, it is provided, “ That if any entry taker shall be desirous to make an entry of lands in his own name, such entry shall be made in its proper place before a Justice of the Peace of the county, not being a surveyor or assistant surveyor, which entry the Justice shall return to the County Court at their next sitting, and the County Court shall insert such entry; and every entry made by or for such entry taker in any other manner than is herein directed, shall be illegal and void, and any other person may enter, survey, and obtain a grant for • the same.”
This section of the Act' of 1777, was held to be in force, unrepealed by this Court in case of Egnew v. Cochran et als., 2 Head, 333. "Where it was also held, that upon common law principles, an entry taker could not make an entry in his name, because against public policy. The Court in that case waive the decision of the question, effect upon a grant thus obtained by the entry taker, whether it is to be regarded as void, and open to attack in a court of law, or only voidable at the suit of the party aggrieved in a court of equity.
The above section being in force, and the principle being sound, that an entry taker could not upon com *128 mon law principles make an entry before himself, or in Ms own office, we tMnk tbe language of tbe statute admits of no doubt in its construction. It points out tbe only mode in wbicb an entry taker can enter lands; it seems to assume, what is clear from tbe previous section of the act, that entry takers were, by the nature of tbe duties therein imposed on them, excluded from entering lands for themselves, and provides an exceptional mode for making an entry in their favor — the language of the concluding clause is conclusive of this question, “and every entry made by or for such entry taker in any other manner than is herein directed, shall be illegal and void — and any other person may enter, survey, and obtain a grant for the same land.”
It certainly could not be maintained that under this clause tbe entry of the entry taker, unless made as required by this section, was not void — and if tbe statute bad not gone further, under tbe decided cases above cited, we think such entry would interpose no obstacle to a subsequent entry. That wbicb is void in law, in the language of the Court in Graham v. Smith, 1 Hum., 548, “is a nullity — it was as if never made” — but tbe balance of tbe section settles tbe whole question, by declaring that “ any other person may enter, survey, and obtain a grant for tbe same land.”
Rainey then bad tbe right to tender bis entries, and if the only obstacle to their reception was, entries made by an entry taker, and not made as required by this section, that is before a Justice of *129 the Peace of the county, returned hy the Justice of the County Court, and inserted (on entry book) by the order of said Court, then the entry taker was bound to receive his entries, and by pursuing the requirements of the law bn the subject, he was entitled to obtain a grant for the land covered by these illegal and void entries. It certainly needs no argument to show that it was not intended by the legislature that such land .should only be subject to entry in the event the-'State should first by proper proceeding have the entry declared void. The language admits of no- such construction.
It follows from this construction, that the entries made by the entry takers _in this case- were absolutely void, as if they never existed — the land was in precisely the same condition,, so far as being subject to entry is concerned, as any other vacant and unappropriated land in the State. In this view of the case, no notice would be required to be given before entering, to any one, because of a claim, or pretended claim, that such land had been previously entered, as the -pretended entry of the entry taker had no legal existence.
As to the other provisions of the Act of 1853-4, that notice is required to be given before entering lancl^ “ on which another resides, or which is cultivated by another” — the question is not presented before us in this record,' of the effect of these provisions, as it is not shown that any one resided on these lands, or cultivated them at the time Rainey tendered his entries. If such was the case, the *130 question is not decided in this opinion, and such parties would not be precluded by this opinion from, having the benefit of these provisions in future proceedings, as between them and Rainey, should their rights be brought in question, or an attempt be made to disturb their possession. "We only hold that entries made by an entry taker, not in accordance with sec. 18 of the act of 17*77, do not entitle parties to be noticed as previous enterers, or to claim that such lands had been previously entered.
It is insisted, however, that the second section of said act of 1853-4 validates all- these entries and grants.
Said section provides that all entries heretofore made — that is previous to 20th December, 1853, the date of the act — and all grants obtained by any person or persons, of any of the vacant and unappropriated lands in this State, where the same at the time of making said entries, and obtaining said grants, did not interfere with the rights of some other person or persons, be, and the same are hereby declared good and lawful entries and grants, and shall be an absolute bar to any suit or suits which may hereafter be commenced in any Court of law or equity by any other person or persons; provided said entries and grants are not a fraud upon the State of Tennessee.
This statute refers alone to entries made before its date, has no prospective operation, and was not intended to have any. Only one of the entries in which the mandamus was ordered by the Circuit Judge, that *131 of twenty-five and a half acres/ was made before tbe passage of this statute.
¥e have had some difficulty in giving a construction to the proviso in the last clause of the section above quoted — that is “provided said entries are not a fraud upon the State of Tennessee.”
On looking at the preamble to statute of 1777— organizing the offices for entries, we find what was the policy of the State for opening her lands to purchase in this way to her citizens. It is “'Whereas, it is-expedient that the lands within this State should be •parcelled out to industrious, people, for the settlement thereof, and increasing the strength and number of the people of the country, by affording an easy and comfortable subsistence to families,” be it therefore enacted, etc. It appears from this. preamble, that the object of the State was, that her lands should be “parcelled out” for settlement iipon them. This object would be very effectually defeated if the very officers appointed for the purpose of acting as agents of the State, - in facilitating the effort of the industrious - citizens to procure a title to his home, should be allowed, with his superior knowledge of the lands, and forms of proceeding in making entries, to take advantage of these circumstances to enter the lands for himself and before himself. It would open the door for immense frauds upon the object of the statute.
The entry taker was a public agent for the disposition of these lands by entry — was charged with this duty by the law. In case of a private agent *132 for the sale of property, if he purchases for himself, or procures au advantage to himself in the matter of his agency, it is held to he fraud on his principal. The same rule, we hold, applies to this case. The entering by an entry taker of lands before himself, was in violation of the duties of his. position, and a fraud upon the State, whose agent he was, as well as the rights of citizens who intended to procure titles to the vacant lands of the State.
It is said, however, that the principal alone could avoid the fraudulent act of the agent, or .charge the agent by reason of it. This is true, but in this case we have seen that the State, by the 18th section of Act of 1777, has said, the entry was void, and the land subject to be entered by other parties — and then we see that the Act of 1853 only validates such entries as are not “frauds upon the State.”
The entries being fraudulent as to the State, are not cured by the act of 1853, and not being cured by it, they stand as before that act, and arc no obstacle to a subsequent enterer.
We think it certain that the State might have avoided these entries and grants by a proceeding on her part, as having been fraudulently obtained —if so, there can be no question that they are not cured by the Act of 1853 — and stand on the same ground they occupied before the passage of that act.
This ■ disposes of the twenty-five and a half acre entry — and of the whole case in this record.
*133 The judgment of the Circuit Court is affirmed, and a decree will be entered here in accordance with this opinion, defendant paying the costs of this Court, and of the Court below.